# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

SCOTTY CARL STONER,            )
                               )
            Plaintiff,         )
                               )
v.                             )    Case No. CIV-11-452-FHS-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

## REPORT AND RECOMMENDATION

Plaintiff Scotty Carl Stoner ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on November 19, 1970 and was 39 years old at the time of the ALJ's decision. Claimant completed his high school education and attended technical school. Claimant has worked in the past as a retail store manager, computer support specialist, and tire builder. Claimant alleges an inability to work beginning February 8, 1999 due to limitations caused by herniated discs in his lower back, pain in the lumbar spine, cervical impingement, torn rotator cuff in his left shoulder and past surgery in his right shoulder, right hip injury, right knee injury, torn miniscus

in his right knee and past surgery for the condition, chronic degenerative osteophytic spurring in the lower thoracic spine, and depression.

## Procedural History

On June 27, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*). Claimant's application was denied initially and upon reconsideration. On November 17, 2009, a hearing was held before ALJ Glenn A. Neel in Paris, Texas. By decision dated April 30, 2010, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's request for benefits. On October 12, 2011, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Status of SSI

On February 25, 2009, Claimant also filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. The ALJ issued a fully favorable decision awarding SSI. (Tr. 31). Claimant does not appeal this decision. As a result, this review is limited to the partial denial of disability benefits only.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing. He concluded Claimant was disabled from February 8, 1999 which ended on October 18, 2001. For the time thereafter, the ALJ determined retained the residual functional capacity ("RFC") to perform sedentary work with limitations. The ALJ found medical improvement was expected with appropriate treatment and recommended a continuing disability review in 24 months for purposes of SSI which is not addressed in this Report.

**Errors Alleged for Review**

Claimant, acting *pro se* in this appeal, asserts the ALJ committed error in (1) improperly relying upon the report of Dr. Tom G. Mayer to the exclusion of all of the other medical evidence; (2) failed to find he met Listing 1.04A; and (3) arriving at an unsupported RFC.

**Consideration of the Medical Record**

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative joint disease/degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the left shoulder status post surgery, and chronic pain disorder with associated depression and anxiety. (Tr. 22-23). Initially, the ALJ determined Claimant was disabled from February

8, 1999 through October 17, 2001. (Tr. 24-25). Thereafter, the ALJ found Claimant medically improved and retained the RFC to perform sedentary work except that he could occasionally climb, balance, stoop, kneel, crouch, and crawl and could not be exposed to hazards including no driving as a part of work. (Tr. 27). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of check cashier, charge account clerk, and fishing reel assembler which existed in sufficient numbers in the national and regional economies. (Tr. 30).

Claimant contends the report of Dr. Mayer upon which the ALJ relied was contradicted by other medical professionals in the record. Dr. Mayer began treating Claimant on May 29, 2001. His diagnostic impressions at that time were "chronic postoperative left shoulder dysfunction, status post rotator cuff repair, acromioplasty and distal clavicle resection; chronic bilateral lumbar radicular syndrome with L4-S1 segmental rigidity and multi-level degenerative disc disease; chronic cervical syndrome with multi-level C3-6 degenerative disc disease and neuroforaminal narrowing; deconditioning syndrome; and chronic pain disorder with medical/psychological features/mental stress with psychophysiological symptoms, depression (severe), anxiety, denial, chronic deficits of functioning, overuse of prescription

medication, inhibition of physical function, family stressors (pending divorce), extended period of disability (28 months), financial stressors, SIBs-eligible (42% impairment), impairment dispute (carrier disputing DDO), employment terminated, uncertain vocational options, possible vocational rehab needs." (Tr. 28).

On May 30, 2001 and putting him through a rehabilitation program identified as PRIDE ("Productive Rehabilitation Institute of Dallas for Ergonomics"), Dr. Mayer found Claimant to have severely deficient cervical mobility and strength deficits with multiple "0" strength and endurance scores that included upper extremity and the aerobic capacity tests. Dr. Mayer also found Claimant's functional capacity in his left upper extremity was severely compromised affecting his upper body performance as did the trapezius and scalene area deficits. Claimant's functional ability in the lower body was extremely low in the severely deficient range. Dr. Mayer also found psychosocial testing revealed a severe loss of function over an extended period of time with a GAF of 57 and moderate stressors. He noted a severe level of clinical depression. (Tr. 468).

On August 22, 2001, Dr. Mayer stated Claimant was in Phase II of the PRIDE program. He noted Claimant had returned after caring for his mother when she had a stroke. While Dr. Mayer still found Claimant to be experiencing pain and tenderness, he stated that he

felt Claimant would make major gains in mobilization with the help of injections and had not done so without them. (Tr. 462).

On August 30, 2001, Dr. Mayer stated he was very pleased with the results of Claimant's progress in moving his L3-L4 segments. He found Claimant could move them better than 50% and had 20-30% of motion at the L-5 level. He reported that Claimant was very pleased in the early phase of the program and was working hard. (Tr. 460).

On October 17, 2001, Dr. Mayer found Claimant had completed the PRIDE program "having done very well." Claimant still had moderate pain/disability, but markedly decreased from the severe levels noted (including severe depression) when he began treatment. He still showed mild to moderate mobility deficits in the spine but good improvement of motion in the shoulder. Strength improved dramatically to adequate levels in the neck and moderately deficient levels in the lumbar spine. Shoulder strength was nearly symmetrical and only mildly deficient bilaterally. The functional capacity in both lower and upper body had improved dramatically coming into the adequate range with excellent effort demonstrated.

Dr. Mayer stated in his report that "[t]he patient now believes he is ready to resume work capability and has a good vocational plan. He is ready for his release to return to work." He acknowledged an unspecified dispute regarding MMI and impairment

8

to be addressed later. (Tr. 457). Dr. Mayer concluded that Claimant was released to return to full-time work with restrictions of 35 pounds frequent, 70 pounds occasional lifting as of October 18, 2001. (Tr. 458).

On October 24, 2001, Dr. Mayer noted Claimant was at "true MMI." He stated that Claimant had a vocational plan to get into work in the computer field with Texas Rehabilitation Commission assistance - "[t]hey have picked him up and he is enthusiastic about working with them." (Tr. 455). Dr. Mayer rated Claimant at a permanent medical impairment rating by AMA Guides techniques at 27% of the whole person. (Tr. 454).

On December 12, 2001, Claimant returned to Dr. Mayer "still not having been able to find work in a difficult work environment and indicating that he has developed increased pain over the past month in high low back with radiation into his right leg." (Tr. 451).

On February 22, 2002, Claimant saw Dr. Mayer reporting that he definitely felt better. Claimant believed the inflammation was under control. He was attending school on a full-time basis and would start his SIBs in about 6 weeks. (Tr. 450). He continued in school and in November of 2002, Dr. Mayer anticipated that Claimant would work when he finished school. (Tr. 446).

On April 24, 2006, Claimant reported low back and left

shoulder pain to Dr. Mayer. He was to finish school in June of 2006. (Tr. 445).

The ALJ gave Dr. Mayer's opinions "great weight" because it was consistent with and fully supported by the evidence in the record as a whole. (Tr. 29). Dr. Mayer was a treating physician and, therefore, his opinions are entitled to controlling weight. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). Further, under Title II for disability benefits, a claimant must prove his disability prior to the expiration of the date of last insurance ("DLI"). Soc. Sec. R. 83-20, 1983 WL 31249 at 1. Claimant's DLI was determined in this case to be December 31, 2002. (Tr. 19). While subsequent medical records have found limitations, the findings did not occur prior to the expiration of the DLI. (Tr. 435). Dr. Mayer's records represent the most relevant statement of Claimant's level of disability in the record before the expiration of the DLI. No error is attributed to the ALJ's adoption of Dr. Mayer's findings in concluding Claimant had reached medical improvement.

### Consideration of Listing 1.04A

Claimant contends the ALJ should have found he met Listing 1.04A Disorders of the Spine since he suffers from degenerative joint disease/degenerative disc disease with nerve root compression. Listing 1.04A requires certain factual findings be

present, in stating:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . .
>
> 20 C.F.R. Pt. 404, Subpt. P, App. I § 1.04A.

The medical record does not support a finding of nerve root compression motor loss or positive straight leg raising before the expiration of the date of last insurance. As a result, the ALJ did not err in failing to find Claimant met Listing 1.04A

### RFC Determination

The ALJ properly relied upon Dr. Mayer's lifting restrictions and opinion as to impairment. (Tr. 29). This evidence supports the ALJ's RFC determination and remains the best medical evidence from the relevant period. This Court finds no error in the ALJ's RFC assessment.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing

reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of September, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE